IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:18-CV-680

Kimberly Tigner

    Plaintiff,

v.

Charlotte Mecklenburg Schools,

    Defendant.

Amended Complaint

**NOW COMES** Plaintiff, Kimberly Tigner ("Ms. Tigner"), by and through the undersigned counsel, with the written consent of the Defendant and leave of Court pursuant to Fed. R. Civ. P. 15(a)(2), and files this Amended Complaint, alleging and complaining of the Defendant as follows:

## PARTIES

1. Ms. Tigner is a citizen and resident of Mecklenburg County, North Carolina.

2. Defendant, Charlotte Mecklenburg Schools ("Defendant") is a North Carolina State Funded Public School, doing business in Mecklenburg County, North Carolina.

3. Defendant employs more than 500 employees within Mecklenburg County at its various school facilities and administrative offices.

4. As a local board of education, Defendant is authorized by the State of North Carolina to employ assistant superintendents and supervisors such as Assistant Superintendent Akeshia Craven-Howell and director James Chancey.

5. The State of North Carolina grants Defendant authority to govern the conduct and performance of school employees such as Ms. Tigner.

## FACTUAL BACKGROUND

6. Ms. Tigner has worked for Defendant since 2010, and was promoted from teaching to her current position as Career Development Liaison in Career and Technical Education ("CTE") Department in 2015.

7. Beginning with her transfer into that department, Ms. Tigner, who is black, was subjected to racially discriminatory conduct, retaliation and a hostile work environment created by, among her fellow employees, Debra Dunn (Ms. Tigner's immediate supervisor), Jimmy Chancey (the CTE Director), and Akeshia Craven-Howell (Assistant Superintendent).

8. For example, in January of 2016, Ms. Dunn circulated a petition amongst Ms. Tigner's coworkers, gathering signatures of white colleagues who considered Ms. Tigner's natural hair style to be "unprofessional" and inappropriate for the workplace.

9. Because of the petition, Mr. Chancey made a point to speak with Ms. Tigner about her hair, and despite the fact that she always kept her natural hair clean and well-groomed, this negative attention from her supervisor humiliated Ms. Tigner to the point that she changed the way she wore her hair.

10. Ms. Dunn regularly insulted Ms. Tigner, in one instance expressing mock sympathy for Ms. Tigner because she was a black single mother.

11. Whenever Ms. Tigner objected to Ms. Dunn's comments or behavior, Ms. Dunn would say she had black friends, so it was okay for her to say what she did.

12. The racial discrimination in Defendant's administration reached beyond the terms and conditions of Ms. Tigner's employment and harmed her then-minor child.

13. Ms. Tigner's son, who is also black and was around seventeen (17) years of age and a student at Charlotte Mecklenburg Schools during the relevant time period, came into the office one day in 2016 to assist Ms. Tigner in carrying a heavy package.

14. Ms. Dunn began complaining to multiple coworkers that she felt threatened by the presence of Ms. Tigner's son in the office because he was a black male.

15. On information and belief, Ms. Dunn directed several of Defendant's employees to use their administrative-level access to PowerSchool, Defendant's internal directory, to look up information about Ms. Tigner's minor son in order to confirm their suspicions that he had some sort of criminal record.

16. Understandably alarmed at discovering her coworkers were violating the privacy of her minor child, Ms. Tigner sent an e-mail titled "Urgent Request for Your Immediate Attention" to Assistant Superintendent Akeshia Craven-Howell on July 8, 2016.

17. Although Assistant Superintendent Craven-Howell sent Ms. Tigner a calendar invite to discuss the matter, such meeting never occurred.

18. Ms. Tigner then reached out to Human Resources to request help with the situation.

19. In mid-July of 2016, Mr. Chancey, informed Ms. Tigner that Human Resources ("HR") directed him to handle the conflict between Ms. Dunn and Ms. Tigner.

20. Rather than attempt to mediate the situation, Mr. Chancey interrogated Ms. Tigner about what he believed was her son's criminal record, demanding she tell him about her son's "felonies."

21. Despite the fact that Ms. Tigner's son was not a convicted felon, Mr. Chancey accused Ms. Tigner's minor son of having a criminal record and banned him from Charlotte Mecklenburg Schools property, saying he did not belong at school activities.

22. Ms. Tigner's minor son could not return to school for nearly two (2) weeks, until Ms. Tigner was able to obtain evidence to prove the allegations of felonies were false.

23. Ms. Tigner filed a complaint with HR about this discrimination against her son and herself.

24. On or about Monday, July 24, 2016, Mr. Chancey approached Ms. Tigner's friend, Collette Williams, and asked her to talk Ms. Tigner into dropping her HR complaint.

25. In addition to the negative stereotypes projected about Ms. Tigner's minor son, Ms. Dunn began a bizarre daily ritual of walking out of her way to pass by Ms. Tigner's desk multiple times a day, then standing there until Ms. Tigner would acknowledge her presence and speak to her.

26. Ms. Dunn did not force anyone else in the office to stop working and speak to her, rather she singled Ms. Tigner out for this daily bullying, forcing Ms. Tigner to stop whatever she was working on, look up at Ms. Dunn, and exchange niceties.

27. Ms. Dunn's absurd bullying ritual and the office tension it caused became an issue that affected productivity as white employees began ganging up on Ms. Tigner.

4

28. With Ms. Dunn's blessing and even encouragement, other white employees made jokes at Ms. Tigner's expense, spoke to her in a derogatory way, or outright ignored her and refused to speak to her when they saw her in the hall or the elevator.

29. Between March 2, 2016 and February 13, 2017, Ms. Tigner complained not only to Mr. Chancey, but to Mr. Chancey's supervisor, Assistant Superintendent Craven-Howell, Robert Carmichael in Human Resources, and finally, Mr. Carmichael's supervisor, Sandra Gero, about the racial discrimination, harassment, and retaliation, with no resolution.

30. In fact, HR advised Ms. Tigner that the racially-motivated harassment and bullying conduct carried out by Ms. Dunn and Mr. Chancey was not violating any employment policy, and suggested Ms. Tigner work things out internally.

31. Furthermore, HR deputized Mr. Chancey to handle the conflict within the CTE department, something he was not equipped to do.

32. Rather than address Ms. Dunn's racially-motivated harassment and antagonism of Ms. Tigner, Mr. Chancey advised Ms. Tigner to be more polite and just say hello to Ms. Dunn.

33. Although management and HR of Charlotte Mecklenburg Schools knew about the racially offensive conduct, harassment and retaliation, it failed to take prompt and effective action to stop the harassment, and in fact enforced retaliation against Ms. Tigner

34. Specifically, on or about February 13, 2017, Ms. Tigner spoke to Employee Relations Manager Sandra Gero about the ongoing discrimination, but Ms. Gero would not listen and told Ms. Tigner she supported Mr. Chancey's decisions.

35. Less than one month after Ms. Tigner's complaint to Ms. Gero, Defendant retaliated against Ms. Tigner by issuing her an unfounded letter of reprimand on or about March

3rd, followed by intentionally locking Ms. Tigner out of work programs and software necessary to perform her job.

36. Ms. Tigner was without access to the tools she needed to perform her duties for more than nine (9) weeks without explanation or apology from Defendant.

37. On March 3, 2017, Defendant again disciplined Ms. Tigner, this time with a formal write-up because Ms. Tigner did not perform another coworker's job functions.

38. Ms. Tigner's multiple complaints and requests for assistance provided Defendant with ample notice of the ongoing discrimination and harassment, yet Defendant took no action.

39. The harassment continued, up to and including the date of Ms. Tigner's filing a charge of discrimination, retaliation and harassment with the Equal Opportunity Employment Commission ("EEOC"), on March 3, 2017.

40. In an effort to advance her career and escape from the racially discriminatory environment in CTE, Ms. Tigner applied for several internal positions within Charlotte Mecklenburg Schools during the summer of 2017.

41. With a bachelor's degree in Business Administration, a Master's of Business Administration ("MBA") in Human Resource Management and Services, teacher licensure, postgraduate work in Business Administration, Management, and Operations, and more than ten (10) years' experience in the field, Ms. Tigner met or exceeded the requirements for all the internal positions to which she applied, including the following:

   a. **Position:** Beacon Learning Community Curriculum Coordinator

      i. Date Applied:07/12/17, Application Period Closing Date: 07/17/2017
      ii. Minimum Education Required: Bachelors; Desired: Masters
      iii. No License Requirements and

6

- iv. Job Description listed sample essential abilities such as exercising professional judgement.
- v. Same Salary as Ms. Tigner earned at that time
- vi. Defendant did not respond to Ms. Tigner's application.

b. **Position:** Advanced Studies Specialist
  - i. Date Applied: 07/12/17, Application Period Closing Date: 07/18/2017
  - ii. Minimum Education Required: Master's degree
  - iii. Required possession of North Carolina teaching certificate, possession of or ability to obtain curriculum and instructional license.
  - iv. Required at least 5 years' teaching experience
  - v. Salary: $68,952
  - vi. Defendant did not respond to Ms. Tigner's application

c. **Position:** Professional Development Specialist
  - i. Date Applied: 07/12/2017, Application Period Closing Date: 07/20/2017
  - ii. Minimum of 5 years' experience
  - iii. Desired: 10 years' PD experience
  - iv. Master's Degree in Curriculum and Instruction, School Administration or other related educational field.
  - v. 5-7 years of increasingly responsible experience in Professional Development research and delivery.
  - vi. Desirable: Advanced Degree in Curriculum and Instruction
  - vii. Ten years of increasingly responsible experience in Professional Development techniques
  - viii. Salary: $54,121.60-$68,952.00
  - ix. Defendant did not respond to Ms. Tigner's application

d. **Position:** Talent Acquisition Leadership Manager, HR
  - i. Date Applied: 07/27/2017, Application Period Closing Date: 08/30/2017
  - ii. Minimum Requirements: Bachelor's Degree in HR, Business, Education or other related field, 3 years of successful experience in recruiting or school-based administration.
  - iii. Desired Qualifications: Master's Degree in HR, Business, School Administration, Organizational Development or other related field, more than 3 years of successful experience in onboarding in a public school setting or school-based administration.
  - iv. Salary: $79,289.60
  - v. Defendant did not respond to Ms. Tigner's application

      e. **Position:** Professional Learning Executive Director
         i. Date Applied: 07/27/2017, Application Period Closing Date: 08/01/2017
         ii. Minimum: Master's Degree, with four years of increasingly responsible experience in education or business
         iii. Desired Qualifications: Principal experience, seven years of increasingly responsible experience in Education or Business
         iv. Salary: $82,305.60-$104,873.60
         v. Defendant did not respond to Ms. Tigner's first application for this position.

42. Despite Ms. Tigner's ample qualifications, she was passed over for all five (5) of the preceding positions.

43. On information and belief, the positions were filled by less-experienced and/or less qualified individuals than Ms. Tigner, or the positions remained open.

44. On information and belief, the positions were filled by non-black individuals, and/or by employees who had not filed claims of discrimination with the EEOC.

45. When Ms. Tigner questioned why Defendant did not interview or even consider her for any of the internal positions, Defendant told Ms. Tigner that while she may have met the written qualifications in the job descriptions for the transfer positions, she did not meet the unwritten qualifications.

46. Instead of Ms. Tigner's immediate supervisor or another manager who worked with her, Assistant Superintendent Craven-Howell completed Ms. Tigner's 2016-2017 Performance Evaluation.

47. Unlike Ms. Tigner, everyone else on her team received a Performance Evaluation from their Director.

8
Case 3:18-cv-00680-RJC-DSC   Document 13   Filed 05/30/19   Page 8 of 13

48. Assistant Superintendent Craven-Howell gave Ms. Tigner a negative Performance Evaluation, and stated Ms. Tigner was not a team player based on Ms. Tigner's filing a charge of discrimination with the EEOC.

49. Ms. Tigner provided Assistant Superintendent Craven-Howell with evidence contradicting the negative review, but despite the evidence, Assistant Superintendent Craven-Howell refused to reconsider Ms. Tigner's negative review.

50. As a result of this ongoing harassment, racially motivated derogatory comments, and failure to promote, Ms. Tigner developed severe anxiety and sought medical help.

51. As a further result of the Defendant's discrimination, in this respect, Ms. Tigner was prevented from advancing in her career, and therefore, suffered money damages.

**First Claim for Relief**
(Violation of 42 U.S.C. §§ 1981 and 1983)

52. Ms. Tigner realleges and incorporates by reference the previous allegations as if fully set forth herein.

53. At all times herein relevant, Defendant and its agents were and are state actors within the scope of 42 U.S.C. § 1983.

54. Defendant, through Mr. Chancey and Assistant Superintendent Craven-Howell, acted under color of state law when depriving Ms. Tigner of, and retaliated against Ms. Tigner for exercising, her right to be free from racially-motivated discrimination and retaliation pursuant to and guaranteed by the U.S. Constitution and by Article I, Section 19 of the North Carolina Constitution.

55. Defendants' imposition of disciplinary action against Ms. Tigner, as well as Defendant's write up and poor evaluation of Ms. Tigner, were done under color of state law

because these actions were carried out by state agents acting in their official capacity, the actions were related to the agents' duties as government officials, and the state actors enforced their actions through the authority granted to them by the State.

56. Mr. Chancey, in his position of authority, acted under color of state law when he effectively endorsed Ms. Dunn's racially-motivated criticism and bullying of Ms. Tigner by refusing to take action to stop Ms. Dunn and by instructing Ms. Tigner to be more polite, reinforcing the existence of a racially hostile work environment in violation of 42 U.S.C. §§ 1981 and 1983.

57. Defendant's agents, including Defendant's HR department, acted under color of state law when they wielded state-given authority to prevent Ms. Tigner from receiving a transfer and/or promotion for which she was qualified.

58. By the conduct described above, Defendant intentionally deprived Ms. Tigner, an African American woman, of the same Constitutional rights enjoyed by white citizens as to the creation, performance, enjoyment, and all benefits and privileges of her contractual relationship with Defendant, in violation of 42 U.S.C. §§ 1981 and 1983.

59. As a direct and proximate result of the unlawful actions of Defendant as herein alleged, Ms. Tigner was deprived of employment opportunities and the attendant compensation and benefits, and therefore seeks the relief to which she is entitled.

60. As a direct and proximate result of the unlawful actions of Defendant as herein alleged, Ms. Tigner has suffered psychological, emotional, anguish, embarrassment, and distress, and loss of enjoyment of life, thereby, entitling Ms. Tigner to compensatory damages.

61. The actions of Defendant as herein alleged were willful, wanton, and carried out with a deliberate disregard for the rights of Ms. Tigner, thereby entitling her to an award of punitive damages.

**Second Claim for Relief**
(Discrimination based on Race in Violation of Title VII of the Civil Rights Act of 1964)

62. Ms. Tigner realleges and incorporates by reference the previous allegations as if fully set forth herein.

63. Ms. Tigner is a member of a protected class in that she is black.

64. At all times relevant, Ms. Tigner was well qualified for multiple positions to which she sought to transfer within Charlotte Mecklenburg Schools.

65. Ms. Tigner was not permitted to transfer to any of the available positions, and the positions either remained open, or were given to other, less-qualified applicants who were either not members of a protected class, or who had not exercised their right to be free from discrimination.

66. Ms. Tigner was subjected to bullying, name-calling, and other harassment based on her race, and was prevented from advancing in her career based on her race, in violation of Title VII.

**Third Claim for Relief**
(Retaliation in Violation of Title VII of the Civil Rights Act of 1964)

67. Ms. Tigner realleges and incorporates by reference the previous allegations as if fully set forth herein.

68. By complaining to HR and then filing a charge with the EEOC, Ms. Tigner exercised her right to be free of race-based discrimination.

69. Defendants retaliated against Ms. Tigner by, among other things, blocking her access to the tools necessary to perform her job, and preventing her from advancing in her career by transferring to another department.

70. Ms. Tigner's exercise of her rights was a direct and proximate cause of Defendant's refusal to transfer her to a position for which she was qualified.

71. As a direct and proximate result of the unlawful actions of Defendant as herein alleged, Ms. Tigner has suffered psychological, emotional, anguish, embarrassment, and distress, and loss of enjoyment of life, thereby, entitling Ms. Tigner to compensatory damages.

72. The actions of Defendant as herein alleged were willful, wanton, and carried out with deliberate disregard for the rights of Ms. Tigner, by Defendant thereby entitling Ms. Tigner to an award of punitive damages.

**NOW WHEREFORE**, Plaintiff, Kimberly Tigner demands a trial by jury on all issues so triable and respectfully prays for judgment against Defendants as follows:

1. For a money judgment against Defendant for the violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 1981A, representing lost benefits of employment and compensatory damages, including but not limited to limited earning capacity, loss of status, damage to reputation, emotional distress, and inconvenience, for an amount to be determined at the trial of the action.

2. For a money judgment against Defendant for punitive damages under both the common law and Constitutional law of the State of North Carolina, and pursuant to N.C. Gen. Stat. § 1D-1, *et seq*, as permitted by law in such amount as may be determined in the discretion of the jury;

3. The court enters a permanent injunction enjoining Defendant from discriminating against employees based on race and/or from retaliating against individuals who seek to be free from discrimination.

4. That the costs of this action pursuant to 42 U.S.C. § 1988, including an award of any attorney fees, should they arise, be taxed to Defendant;

5. For pre-judgment and post-judgment interest on all amounts found due to Plaintiff at the legal rate;

6. For such other and further relief at law and equity as the Court may deem just and proper.

Respectfully Submitted,

**This, the 30th day of May, 2019.**

                              Vennum PLLC

                              By:    */s/ Elizabeth Vennum*
                                         Elizabeth Vennum
                                         N.C. State Bar No. 49747
                                         Vennum PLLC
                                         10612 Providence Road
                                         Suite D-510
                                         Charlotte, NC 28277
                                         liz@vennumlaw.com
                                         Tel. (980) 338-0111
                                         *Counsel for Plaintiff*